UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Tammie M. Shered | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 CV 50382 |
| | ) |
| Nancy A. Berryhill, | ) Magistrate Judge Iain D. Johnston |
| Acting Director of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Tammie M. Shered (Plaintiff) last had substantial gainful activity (SGA) in 2002, when she was a teacher's aide.[1] The Plaintiff's disability claim involves her complaints of migraines, dizziness, photophobia, mental impairments, and social limitations. R. 521. The extent of these medical impairments and how they impact the Plaintiff's residual functional capacity (RFC) is at issue.

## BACKGROUND

To summarize the somewhat lengthy procedural history, the Plaintiff originally filed her claim for disability in July 2008 alleging an onset date of February 1, 2004. R. 479, 522. The Administrative Law Judge (ALJ) denied the claim in 2010; the Appeals Council denied a request for review; a complaint was filed in the U.S. District Court for the Northern District of Illinois in 2011; and the

---

[1] At the time of the March 2016 hearing, the Plaintiff was working two to three days per week, four hours per day, at a senior center as part of a training program. R. 517, 523, 556-57. However, this was not determined to qualify as SGA. R. 517.

1

case was remanded. R. 479. In 2013, the ALJ issued another unfavorable decision; the Appeals Council denied review; and in August 2015, the U.S. District Court once again remanded the case. R. 479. The Appeals Council issued its remand order in November 2015. The ALJ issued the third unfavorable decision in May 2016, and the Appeals Council declined to assume jurisdiction in October 2016, resulting in the Plaintiff's present appeal, filed in December 2016.

The ALJ's decision in May 2016 found that the Plaintiff did not engage in substantial gainful activity (SGA) during the period from her alleged onset date of February 1, 2004 through her date last insured of March 31, 2011 (step one); and that through her date last insured, the Plaintiff had the severe impairments of open angle glaucoma bilaterally, blindness in her left eye, and hypertension (step two). [2]

The ALJ determined that the Plaintiff had the non-severe impairments of obesity and depression. The ALJ also found that the mental residual functional capacity (RFC) assessment used at steps four and five of the sequential evaluation process required a more detailed assessment. R. 498. The ALJ found that the record did not support the Plaintiff's claim of labyrynthitis associated with symptoms of vertigo that required her to lie down during the day. R. 494. The ALJ briefly

---

[2] The ALJ uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. §404.1520(a)(4)(i – v). Under this analysis, the ALJ must inquire in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's severe impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; meaning whether the claimant can still work despite the claimant's physical and mental limitations, which is referred to as the claimant's residual functional capacity ("RFC"); and (5) whether the claimant is capable of performing work in light of the claimant's age, education and work experience. *Id.*; *see also Liskowitz*, 559 F.3d at 740. After the claimant has proved that she cannot perform her past relevant work due to the limitations, the Commissioner carries the burden of showing that a significant number of jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

discussed the opinion of consultative examiner Dr. Therese Lucietto-Sieradzki ("CE"). The ALJ gave the CE's opinion little weight as the CE appeared, in the purview of the ALJ, to have based her opinion primarily on the Plaintiff's subjective reports and presentation as well as an incomplete examination. R. 494. Additionally, the ALJ stated that although the Plaintiff had reported memory loss to the CE, the documented mental status examinations in the record routinely showed that the Plaintiff's memory was intact. R. 494.

At step three, the ALJ's decision in May 2016 also found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526.

It is the ALJ's analysis and determinations that followed that are the primary subject of the Plaintiff's present appeal. The ALJ determined, before step four, that the Plaintiff had the RFC to perform light work, except that the Plaintiff should never climb ladders; could frequently climb stairs, balance, crouch, crawl, kneel, and stoop; cannot operate a forklift or heavy equipment due to monocular vision; cannot engaged in fine assembly due to limited depth field; and should avoid all unprotected heights and moving machinery. R. 499. In making this determination, the ALJ stated that he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, and that he also considered opinion evidence. [3]

---

[3] Prior to considering step four, the ALJ must first determine the Plaintiff's residual functional capacity (RFC) based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 404.1520(e). In determining the RFC,

The ALJ summarized the Plaintiff's characterization of disability at a March 2016 administrative hearing held before the ALJ, noting that the Plaintiff's representative maintained that the Plaintiff's disability primarily stemmed from her dizziness, recurrent migraine headaches, photophobia, and depression and anxiety. R. 500. The ALJ also summarized the Plaintiff's testimony that she had bouts of dizziness at least once a month that required her to lie down, that her vision and photophobia had worsened over the past fifteen years, that she experienced migraine headaches once a week, and that her depression and anxiety caused her to socially withdraw once or twice a week.

In all-to-familiar, canned administrative jargon, the ALJ concluded that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 500. In support of this conclusion, the ALJ discussed the Plaintiff's hypertension, blindness in one eye and open angle glaucoma bilaterally, and grip in her hands. The ALJ also discussed the opinion evidence of the medical expert Dr. James McKenna, the State Agency medical consultants Dr. Charles Kenney and Dr. Ernst Bone, and the third party Adult Functioning report made by the Plaintiff's brother-in-law Mr. Tommy Shered. Notably, the ALJ failed to discuss the Plaintiff's depression, which the ALJ

---

the ALJ must consider all medically determinable impairments of which he is aware, including medically determinable impairments that are not severe. 20 C.F.R. § 404.1545 (a)(2). The ALJ will consider descriptions and observations of the Plaintiff's limitations from her impairments provided by the Plaintiff. 20 C.F.R. § 404.1545 (a)(3).

had previously characterized as a medically determinable mental impairment (R. 494). The failure is even more critical because the ALJ noted that the discussion previously provided about the Plaintiff's depression was in the context of rating the severity of her mental impairments and that the mental RFC assessment at steps four and five required a more detailed analysis (R. 498).

The ALJ next determined that the Plaintiff was capable of performing past relevant work as a teacher's aide through her date last insured and that the work did not require the performance of work-related activities precluded by the Plaintiff's RFC (step four). R. 503. This finding at this step yielded the result that the Plaintiff was not disabled.

## DISCUSSION

In this appeal, the Plaintiff makes four arguments relating ultimately to the sufficiency of the ALJ's determinations regarding the Plaintiff's RFC. The Plaintiff argues that the ALJ erred in (1) violating the law of the case doctrine with regard to the Plaintiff's alleged need to lie down during the day, (2) failing to explain why he did not include restrictions in his assessment of the Plaintiff's RFC that stemmed from the psychological testing Northern Illinois University (NIU) conducted, (3) assessing the intensity, persistence, and limiting effects of the Plaintiff's symptoms, and (4) finding that the Plaintiff could perform past relevant work. In turn, the Government argues that there is no law of the case in this civil action; the ALJ properly considered the Plaintiff's mental limitations; the ALJ properly assessed the Plaintiff's alleged symptoms; and the ALJ properly found that the Plaintiff

5

could perform her past relevant work. Because the issue of whether the ALJ properly considered the Plaintiff's medically determinable mental impairments when determining the Plaintiff's RFC is sufficient to require remand, an issue that arises within the Plaintiff's first argument and has bearing on subsequent arguments, this issue will be the primary focus of this opinion.

But initially, the Court addresses the law-of-the case argument. This Court's August 2015 remand order did not establish law of the case. Said remand order was in response to the parties' agreed motion and included instructions for the ALJ to follow on remand, but did not include any findings made by the Court. *See Key v. Sullivan*, 925 F.2d 1056, 1061 (7th Cir. 1991)(holding that "the law of the case doctrine comes into play only with respect to issues previously determined," and that "[i]f an issue is left open after remand, the lower tribunal is free to decide it"); *Angevine v. Sullivan*, 881 F.2d 519, 522 (7th Cir. 1989)(stating that to determine whether the Government violated the law of the case on remand, the Court must carefully consider the scope of the district court's remand order). Nevertheless, the instructions included in the August 2015 remand, if followed by the ALJ in the next proceeding, would be helpful in avoiding yet another remand. Frankly, the Court should not need to constantly remind ALJs on remand to follow the Court's instructions, especially when those instructions give the ALJs a roadmap on remand.

Turing to the Plaintiff's other arguments, the ALJ correctly noted in his May 2016 decision that "[t]he mental residual functional capacity assessment used at

6

steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," than what was provided in the ALJ's evaluation at step two. R. 498. *See Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe …"); *see also Green v. Astrue*, 2013 WL 709642 at *10 (N.D. Ill. 2013)(finding that the ALJ was required to consider all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, and that the ALJ could not fall back on a simple recitation of medical evidence but fail to engage in meaningful discussion of both medical and non-medical evidence). In step two, the ALJ determined that the Plaintiff had the medically determinable mental impairment of depression, but that the Plaintiff's mental impairments were not severe upon consideration of the four broad functional areas.[4] R. 497, 498. However, in the following sections in which the ALJ determined the Plaintiff's RFC and found that the Plaintiff could perform past relevant work in step four, the ALJ provided no discussion at all about the Plaintiff's medically determinable mental impairment of depression.

In his determination of the Plaintiff's RFC, the ALJ briefly summarized the Plaintiff's representative's arguments at the March 2016 hearing that the Plaintiff's depression and anxiety resulted in social limitation, and that the Plaintiff herself

---

[4] In finding that the Plaintiff's mental impairments were not severe, the ALJ considered the four broad functional areas outlined in the disability regulations for evaluating mental disorders and in section 12.00(C) of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1). R. 497. The ALJ determined that the Plaintiff had mild limitation in (1) activities of daily living, (2) social functioning, and (3) concentration, persistence or pace. R. 497, 498. The ALJ determined that the Plaintiff had experienced no episodes of decompensation of extended duration (4). R. 498.

7

testified that due to her depression/anxiety, she lacked motivation and had difficulty being around others, causing her to socially withdraw once or twice a week. R. 500. The ALJ then summarily stated that "[a]fter careful consideration of the evidence," he found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*." (emphasis added) R. 500. The ALJ then went on to address the Plaintiff's medically determinable physical impairments and how they impacted the ALJ's RFC determination.[5] However, the ALJ failed to mention at all, let alone engage in a meaningful discussion of, the Plaintiff's medically determinable mental impairment of depression. To be blunt, there was zero discussion of the Plaintiff's depression in formulating the RFC.

Perhaps the ALJ was relying on his discussion of the evidence regarding the Plaintiff's mental impairments he made in step two when he referenced "the reasons explained in this decision." R. 500. However, this possibility is disposed of by the ALJ's statement at the close of his discussion regarding his designation at step two of the Plaintiff's mental impairments as non-severe that the limitations identified in the paragraph B criteria were used to rate the severity of mental impairments at steps two and three and were *not an RFC assessment*, that the

---

[5] The ALJ specifically addressed the Plaintiff's hypertension (R. 500), blindness in her left eye and bilateral open angle glaucoma (R. 501), grip (R. 501), opinion evidence by medical expert Dr. McKenna as to the Plaintiff's physical impairments, including his discrediting of the Plaintiff's contention of disabling headaches (R. 501), opinion evidence by State Agency medical consultant Dr. Charles Kenney (R. 502), opinion evidence by State Agency medical consultant Dr. Ernst Bone (R. 502), and the third party Adult Functioning report submitted by the Plaintiff's brother-in-law (R. 502).

8

mental RFC assessment at steps four and five required a more detailed assessment, and that the following RFC assessment reflected the degree of limitation the ALJ had found in the paragraph B mental function analysis. R. 498. Further, this possibility is unlikely because the ALJ included in his determination of the Plaintiff's RFC a brief discussion of at least one other alleged impairment that resulted in no restrictions added to her RFC, So even if the ALJ were not inclined to determine the Plaintiff's mental impairment(s) warranted restrictions in her RFC, he was aware of the necessity to nonetheless discuss the impairment.[6] Quite simply, the ALJ made a determination that the Plaintiff had the non-severe medical impairment of depression at step two, but then failed to discuss this impairment when determining the Plaintiff's RFC in violation of 20 C.F.R. § 404.1520(e) and § 404.1545 and SSR 96-8p. This renders the ALJ's analysis devoid of a glimpse into the reasoning behind his decision to deny benefits, failing to permit an informed review and necessitating a remand for redetermination of the Plaintiff's RFC. *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001)(holding that while the Court has never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind his decision to deny benefits).

Further, this failure by the ALJ to consider the Plaintiff's depression was not harmless error. The Plaintiff argues that the vocational expert (VE) testified at the March 2016 hearing that if an individual were off task for more than fifteen percent

---

[6] The ALJ discussed the Plaintiff's claim that she had occasional poor grip in her hands, but noted that the record did not include underlying pathology to account for those assertions. R. 501.

9

of the workday for any reason, she would be precluded from competitive employment.[7] R. 568. This misstates the context, as this limitation was offered in conjunction with a hypothetical limitation of needing one extra break per hour to get away from fluorescent lighting, not in the context of depression. Nonetheless, at the start of the questioning of the VE, the ALJ noted that based on the medical expert Dr. Crimeris' testimony, no mental limitations resulted in the Plaintiff's RFC, but if the ALJ did not accept Dr. Crimeris' testimony, then the VE testified that the Plaintiff would not be able to do her past relevant work. Therefore, the ALJ's failure to discuss the Plaintiff's depression in his determination of her RFC was not harmless error. It can be inferred from the sparse discussion at the start of the VE's testimony that the addition of an RFC limitation due to the Plaintiff's mental impairment may have rendered the Plaintiff unable to do her past relevant work. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)(explaining that the harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand); *cf. Osmani v. INS*, 14 F.3d

---

[7] Regarding the VE's testimony and the hypotheticals provided, the ALJ noted that the psychologist (referring to the medical expert Dr. Crimeris who testified at the March 2016 hearing) concluded that the Plaintiff's mental limitation(s) were non-severe and mild in all categories, so the ALJ did not get a limitation there. R. 565. The ALJ then changed the hypothetical to assume that he did not accept Dr. Crimeris' testimony and therefore the sustained concentration, persistence and pace would be for simple work of a routine and repetitive type, and the VE testified that the Plaintiff would not be able to do her relevant past work. R. 566. The Plaintiff's attorney further developed the hypotheticals by adding in the limitation of inability to endure fluorescent lighting for 40 hours per week, which ruled out the light, unskilled representative positions of order caller, office helper, and mail clerk. R. 567. The VE testified that the limitation of missing work two to three times per month for a migraine headache would not be consistent with competitive employment. R. 567. The VE also testified that the requirement of one extra break per hour to get away from fluorescent light, if the extra break made the person off take at least fifteen percent of the workday, would rule out the representative positions as well. R. 567-68. The VE testified that an inability to stand due to dizziness two to three times per month would rule out the representative positions. R. 568. Finally, the VE testified that a limitation of only occasional contact with the public and coworkers and limited contact with supervisors would rule out the office helper and order caller positions. R. 569.

13, 15 (7th Cir. 1994)(stating that harmless error does not require remand "when it is clear what the agency's decision has to be").

Regarding the Plaintiff's contention that the ALJ erred in failing to explain why he did not include restrictions in the Plaintiff's RFC stemming from the psychological testing conducted by NIU, it is noted at the outset that the ALJ failed to discuss any mental impairments whatsoever when determining the Plaintiff's RFC. However, when determining at step two whether the Plaintiff had any additional non-severe impairments aside from her severe impairments, the ALJ did discuss Plaintiff's IQ testing conducted by NIU and psychologist Dr. Laura Pittman's opinion. R. 495. Indeed, the ALJ provided a somewhat lengthy discussion of the Plaintiff's mental impairments in his step two discussion, including, in addition to the NIU testing, the following: consultative examiner Dr. Therese Lucietto-Sieradzki's opinion regarding memory loss and outbursts made during her examination (R. 494), the Plaintiff's depression and related medication history (R. 494), evidence in the record of the Plaintiff presenting with a lack of signs of depression and anxiety (R. 495), psychiatric treatment notes between 2006 and 2011 (R. 495-96), medical expert Dr. Crimeris' opinion and his conclusion that based on his review of the Plaintiff's record, the Plaintiff did not have a severe mental health impairment nor was a cognitive impairment clinically established in the record (R. 496), the opinions of the State Agency psychological consultants, and the opinion of the Plaintiff's licensed social worker (noted as an "other" source because this was not an acceptable medical source per Social Security Regulations) (R. 496).

But critically, the ALJ summarized the findings of the testing provided by NIU but did not state what weight, if any, he was giving these findings or whether these findings indicated or supported a determination of a mental impairment, and if so, whether the Plaintiff's RFC should include restrictions based on any such impairment. R. 495. The Government argues that the Plaintiff misstates the significance of the NIU findings, and that very well may be the case. But the issue of the sufficiency of the ALJ's discussion of the Plaintiff's mental impairments in the context of determining the Plaintiff's RFC remains. In this case, rather frustratingly, the ALJ did not go far enough in his discussion of the Plaintiff's non-severe mental impairments when he failed to discuss them at all in his determination of the Plaintiff's RFC despite discussing many opinions in the record relating to mental impairments at step two.

The Plaintiff's argument that the ALJ erred in assessing the intensity, persistence, and limiting effects of the Plaintiff's symptoms also requires remand. Initially, the Court must address whether the ALJ applied the proper regulation, and if so, whether that error was harmless. The ALJ did not properly follow SSR 16-3p in evaluating the Plaintiff's symptoms. It is noted that SSR 16-3p rescinded and superseded SSR 96-7p, and that in the republished version of SSR 16-3p on October 25, 2017, it was clarified that social security adjudicators would apply SSR 16-3p when making determinations and decisions on or after March 28, 2016. Because the ALJ's decision was issued in May 2016, the proper standard to look at is SSR 16-3p as opposed to SSR 96-7. However, the ALJ's error was harmless. SSR 96-7p and

SSR 16-3p "are not patently inconsistent with one another," and that a "comparison of the two Rulings shows substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms." *McCammond v. Colvin*, 2016 WL 3595736 at *3 (N.D. Ill. 2016). Accordingly, the erroneous application of SSR96-7 does not require remand, but the Court must still determine whether the ALJ erred regarding intensity, persistence, and the limiting effects of the Plaintiff's symptoms.

The Plaintiff contends that the ALJ failed to explain how he considered the Plaintiff's activities of daily living when evaluating her statements concerning the intensity, persistence and limiting effects of her symptoms. Although the ALJ was not obligated to believe what the Plaintiff stated about her activities of daily living, he failed to build any logical bridge between the record and his conclusion when he stated that the Plaintiff's "statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."[8] R. 500. *See McCammond*, 2016 WL 3595736 at *6 (stating that when the ALJ merely cited what the plaintiff said he could do, characterized those activities as extensive, and ended the analysis, the ALJ failed to build any bridge at all between the record and the ALJ's conclusion). It is unclear what parts of his decision the ALJ is even

---

[8] Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Mason v. Colvin*, 13 C 2993 2014 U.S. Dist. LEXIS 152938, *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusions.")(citing *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996).

13

referring to, as the immediately following paragraphs of the ALJ's decision make no mention of the Plaintiff's claims that she kept her home dark, that she avoided brightly lit places, that she lacked motivation and had difficulty being around others, or that she socially withdrew once or twice a week, despite the ALJ listing these, presumably as limiting effects the Plaintiff testified experiencing. R. 500. Thus, the ALJ failed to provide any meaningful discussion of why he was discrediting the Plaintiff's statements regarding the limiting effects of her symptoms when determining the Plaintiff's RFC.

Finally, the Court need not discuss the Plaintiff's argument that the ALJ erred in finding that the Plaintiff could perform her past relevant work, because this step is dependent on the ALJ's determination of the Plaintiff's RFC, and because the Court has already found that the ALJ's determination of the Plaintiff's RFC warrants remand. On remand, after the ALJ properly reevaluates the Plaintiff's RFC, the reevaluated RFC will be used in the ALJ's step four determination of whether the Plaintiff was capable of performing past relevant work. The resolution of whether the ALJ's determination in his May 2016 decision of the Plaintiff's ability to perform past relevant work is thus moot.

Having found that a remand is warranted, this Court need not address any remaining arguments (or sub-arguments). On remand, the ALJ should make a reasoned assessment of the Plaintiff's RFC. However, in remanding this case, this Court is not indicating a particular result on remand. This remand is on the basis of procedural defects in the ALJ's decision.

For the foregoing reasons, the Plaintiff's motion for summary judgment is granted, the Government's motion for summary judgment is denied, and this case is remanded for further consideration.

It is so ordered.

Entered: April 27, 2018

By:_____
**Iain D. Johnston**
**U.S. Magistrate Judge**